■ FABIO MUCCHI et al., Appellants, v ELI HADDAD CORP., Respondent. — Order, Supreme Court, New York County (Herman Cahn, J.), entered May 26,

1983, granting plaintiff-appellant Mucchi reargument but upon reargument adhering to the original determination denying plaintiff-appellant's motion for an injunction to toll the notice to cure and termination of the tenancy for an alleged violation of the lease, affirmed, without costs. ¶ The plaintiff corporation Right Image leased loft premises from the defendant solely for commercial use, the lease being signed by the plaintiff Mucchi on behalf of the corporation. The landlord served a notice to cure, addressed to Right Image and received by it, on November 19, 1982. It charged a breach of the lease in that the premises were being used for residential or joint residential-commercial use, and gave Right Image until November 30 to cure. In response to this notice to the corporation the plaintiff Mucchi commenced this action seeking a declaration of his rights to residential use of the property. Simultaneously, by show cause order embodying a temporary restraint, Mucchi moved for a *Yellowstone* injunction (see *First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630) to stay the curing period and any eviction pending the determination of the declaratory judgment action. ¶ On January 24, 1983 Special Term denied Mucchi's motion for lack of standing. It found that the notice to cure had been addressed to and served on Right Image and that, while Mucchi may be associated with Right Image, it was the latter which was the lessee of record. Special Term also noted that Mucchi's complaint does not explain either his relationship to Right Image or to the premises, and further that the papers annexed to the show cause order demonstrated no interest of Mucchi in the premises. The following day the defendant served a notice of termination of the lease effective February 1, 1983. No stay was sought even by Right Image, and the defendant commenced an eviction action against it on February 4. Two weeks after the lease had been terminated, on February 14, Mucchi sought reargument of his prior *Yellowstone* motion. (He also sought to have Right Image joined as a party plaintiff in his declaratory judgment action. This was granted.) Reargument was granted but the court adhered to its original decision, finding the application untimely since the time to cure had expired by virtue of the termination of the lease. ¶ The dissent would hold that the initial order, that of January 24, was incorrect and therefore it could have been modified *nunc pro tunc* on reargument, thus eliminating the obstacle posed by the termination of the lease. It relies on those cases where substantial compliance has been infected by a meaningless error in form (see *Valz v Sheepshead Bay Bungalow Corp.,* 249 NY 122). Such is not the case here. At the time of the initial application neither the moving papers nor the complaint in the underlying action so allied Mucchi to Right Image that it could be said that one was such an alter ego of the other that a mistake in the name of the plaintiff and moving party was an insubstantial error. ¶ Furthermore, a preliminary injunction is a *provisional* remedy. It is not the function of a provisional remedy to declare the ultimate rights of the parties. As a *provisional* remedy, the chief function of a preliminary injunction is to prevent any conduct before judgment which may impair the ability of the court to render the appropriate final judgment. But if the court can now retroactively toll the period of running the notice to cure, there is no reason why the court cannot do so equally well in its final judgment, when its decision will no longer be provisional. Concur — Silverman, Lynch and Alexander, JJ.

Sandler, J. P., and Asch, J., dissent in a memorandum by Asch, J., as follows: Plaintiff Mucchi is the principal of the corporate tenant Right Image, Inc. That corporation leases loft premises at 5 West 20th Street, owned by defendant landlord Eli Haddad Corp. Plaintiff occupied the subject premises both as a ' residential tenant and as a commercial occupant, i.e., a professional photographer, since March 20, 1981, the inception of the lease. ¶ On November 19, 1982, a notice to cure was received by the plaintiff alleging joint commercial-

residential tenancy, in violation of the lease, which restricted use and occupancy to the photography business. The notice demanded that plaintiff cure the violation no later than November 30, 1982. Plaintiff responded by bringing this action seeking a declaration of his right to residential use of the subject premises. Simultaneous with service of the summons and complaint, plaintiff moved, by order to show cause, for a temporary restraining order and preliminary injunction. The order to show cause enjoining defendant from taking any actions to evict the plaintiff and tolling the notice to cure was signed by Special Term on November 29, 1982. ¶ Plaintiff alleged in support of his application for injunctive relief pursuant to *First Nat. Stores v Yellowstone Shopping Center* (21 NY2d 630) that defendant landlord knew of and acquiesced in his residential occupancy by acceptance of the rent with knowledge of plaintiff's residential use. Further, plaintiff alleged that the facts herein are in compliance with the provisions of section 281 of the Multiple Dwelling Law and hence that he is thus entitled to protection from eviction under section 286 of the Multiple Dwelling Law ("Loft Law", Multiple Dwelling Law, art 7-C). ¶ Special Term in its original decision, entered January 24, 1983, denied plaintiff's application for a *Yellowstone* injunction on the grounds that he was neither the proper party to bring the action nor the recipient of the notice to cure, since the corporation, Right Image, Inc., was the named lessee. On January 25, 1983, a notice of termination of the lease was mailed to plaintiff, effective on February 1, 1983. On February 14, plaintiff moved by order to show cause for reargument of his motion for a *Yellowstone* injunction and for related relief. In the decision-order appealed from herein, Special Term granted reargument but adhered to its original decision, and at the same time allowed plaintiff to amend the complaint to add Right Image, Inc., as a party plaintiff. ¶ I would modify the order appealed from by reversing that part which denied plaintiff's motion for a preliminary injunction. ¶ We need not examine, with particularity, plaintiff's entitlement to *Yellowstone* relief. "It has been repeatedly held that *Yellowstone (supra)* is intended only to preserve the *status quo* until the parties' rights can be fully adjudicated while the tenancy remains in effect without consideration of the merits of the parties' contentions [citations omitted]" (*Wilen v Harridge House Assoc.*, 94 AD2d 123, 127). Even aside from this liberal approach, it appears that plaintiff made a sufficient showing for his entitlement to injunctive relief. ¶ On the reargument, Special Term felt constrained to deny plaintiff's application because defendant had served a notice of termination subsequent to the original motion, but prior to the motion to reargue. It held that since the time to cure had expired, plaintiff's application was untimely. ¶ CPLR 305 (subd [c]) reads: *"At any time,* in its discretion and upon such terms as it deems just, the court may allow any summons or proof of service of a summons to be amended, if a substantial right of a party against whom the summons issued is not prejudiced" (emphasis added). CPLR 2001 reads: *"At any stage of an action,* the court may permit a mistake, omission, defect or irregularity to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded" (emphasis added). ¶ Special Term overlooked the fact that the court initially did have jurisdiction to grant a *Yellowstone* injunction, since plaintiff timely invoked its jurisdiction immediately upon service of the notice to cure. If the court's decision in its initial order was incorrect, as I believe it was, then Special Term could modify or vacate such order *nunc pro tunc,* notwithstanding defendant's service of a notice of termination after the first decision. The Court of Appeals has noted: "No rule or measure has ever been devised by which we may determine in every case, with definite certainty, whether a defect is jurisdictional or is a mere irregularity which may be disregarded or amended" (*Valz v Sheepshead*

*Bay Bungalow Corp.,* 249 NY 122, 134). The court in *Valz* found that an order *nunc pro tunc* was properly made amending an order for service of a summons by publication, to direct publication of the summons in the newspaper which had in fact published it, instead of the newspaper originally designated which had not published it. The basis of this holding was that the purpose of the statute, which was to give notice to defendants, was realized (*supra,* at p 135). The court went on to say (p 137): "We may not ascribe to the Legislature an intent to give undue importance to rigid formality. The observance of requirements left by the statute to the discretion of the court or judge may not reasonably be regarded as a statutory condition to the court's jurisdiction". ¶ Similarly, in the case at bar, the court had the power in the first instance to correct the mistaken designation of the individual as plaintiff instead of his corporation. In his motion papers and in the complaint, plaintiff made clear that he was the residential tenant of the loft and that he was the party who entered into possession of the premises pursuant to the commercial lease. Defendant landlord was not prejudiced in any way since it was aware at all times that the corporation was the alter ego of plaintiff. In fact, plaintiff signed the lease on behalf of the corporation. ¶ "It is elementary that mistakes or irregularities not affecting a substantial right of a party are not fatal. Mistakes relating to the name of a party involving a misnomer or misdescription of the legal status of a party surely fall within the category of those irregularities which are subject to correction by amendment, particularly when the other party is not prejudiced and should have been well aware from the outset that a misdescription was involved" (*Covino v Alside Aluminum Supply Co.,* 42 AD2d 77, 80). Indeed, it has been held that the court has the right to strike out the name of the president of a corporation in whose name an action was brought, and to insert the name of the corporation (*Dean v Gilbert,* 92 Hun 427). ¶ Since the original decision of January 20, 1983 was incorrect, it would be unjust to deny the tenant relief to which he would have been entitled only because of the service of a notice of termination between the date of the erroneous order and the motion seeking leave to reargue (see *Cearley v Haddad Corp.,* Supreme Ct, NY County, NYLJ, Feb. 16, 1983, p 11, col 3, app dsmd as moot 98 AD2d 622). ¶ The Second Department in a case similar to the instant one has recently held "[A]n erroneous or inadvertent failure to continue a properly granted ex parte toll will not extinguish a tenant's opportunity to cure, if the appellate tribunal ultimately decides that the toll should have been continued * * * In so deciding, we rely on the fact that the *Yellowstone* rule is equitable in nature, and in equity *the erroneous denial of a timely sought temporary toll* or the inadvertent failure to continue one already granted, *should not result in the forfeiture of a leasehold,* even if the tenant has failed to obtain a further temporary restraint pending appeal [citations omitted]" (*Mann Theatres Corp. v Mid-Island Shopping Plaza Co.,* 94 AD2d 466, 476-477; emphasis added; see, also, Wallach, *"Yellowstone" Revisited II — A Different View of Doctrine,* NYLJ, Feb. 21, 1984, p 1, col 3).